UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CRAIG C. HUGHES,<br><br>   Defendant. | Crim. Action No. 04-445 (CKK)<br>Civil Action No. 05-1990 (CKK) |

**MEMORANDUM OPINION**
(July 27, 2006)

This matter relates to the sentencing of Petitioner, Craig C. Hughes ("Petitioner") after his guilty plea for aiding and abetting a District of Columbia official in the receipt of bribes in violation of 18 U.S.C. §§ 201(b)(2)(A), (C) and 18 U.S.C. § 2.  Currently before the Court is Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Petitioner's Motion") accompanied by Petitioner's Memorandum in Support ("Petitioner's Memorandum").  Petitioner claims that he is entitled to have the Court modify his sentence because his family's hardship due to his incarceration was not sufficiently articulated at sentencing.  Pet'r Mem. at 1.  Specifically, he seeks to have this Court modify his sentence to ten months served in home confinement or a halfway house, rather than his current sentence, composed of five months of incarceration and five months of home confinement.  For the reasons set forth below, the Court shall deny Petitioner's motion for a modification of his sentence.

**I.  BACKGROUND**

Petitioner was arrested on August 26, 2004 for aiding and abetting a District of Columbia official in the receipt of bribes in violation of 18 U.S.C. §§ 201(b)(2)(A), (C) and 18 U.S.C. § 2. 7/8/05 Defendant Craig C. Hughes' Memorandum in Aid of Sentencing ("Def.'s Sentencing Mem.") at 1, 5.  Specifically, prior to his arrest, Petitioner

>put Federal undercover agents in touch with a middleman who, in turn, steered the agents to a teller at the D.C. Department of Motor Vehicles Branch Office in Georgetown. [Petitioner] was aware that the agents would be issued drivers' licenses in names other than their real names, based on documentation prepared with [Petitioner's] assistance. In the course of the transactions, [Petitioner] accepted cash of $6,800, most of which he passed on to the middleman who apparently shared the money with the teller.

Def.'s Sentencing Mem. at 1–2. On September 3, 2004, Petitioner agreed to enter into a plea agreement in which he committed to "plead guilty to a one-count information charging a violation of 18 U.S.C. §§ 201(b)(2)(A), (C) (Bribery) and 18 U.S.C. § 2 (Aiding and Abetting)." *Id*. at 5; 9/3/04 letter from K. Wainstein to A. Kleiboemer re: plea offer ("Plea Offer") at 1. Petitioner also agreed to cooperate with the Government "in any manner as to which the government deems the cooperation relevant." Plea Offer at 3. On September 7, 2004 Petitioner "met for several hours with law enforcement personnel and provided additional information during a lengthy interview." Def.'s Sentencing Mem. at 5. The plea agreement was formally executed on October 25, 2004. 10/25/04 Waiver of Indictment; Plea Offer at 7. On May 3, 2005, before Petitioner was sentenced, he met with law enforcement officers an additional time, providing more information. Def.'s Sentencing Mem. at 5.

On July 8, 2005, Petitioner filed his memorandum regarding his sentencing, in which he argued that, despite the fact that the Government had not moved for a downward departure of his sentence for the substantial assistance Petitioner provided, the sentencing court could downwardly depart from Petitioner's sentence *sua sponte* pursuant to *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Def.'s Sentencing Mem. at 2. Petitioner argued that the requirement that departures be granted only upon motion of the Government was based on the pre-*Booker* view that the Sentencing Guidelines had the force of law. Def.'s Sentencing Mem. at 3. However, Petitioner reasoned, because *Booker* stated that the United States Sentencing Guidelines

were advisory and not mandatory, the pre-*Booker* regime, in which "virtually every federal court addressing the issue held that Section 5K1.1 [the substantial assistance sentencing guideline] was operative only upon motion of the Government," was no longer applicable. *Id*. Accordingly, in the post-*Booker* context, the sentencing court could depart downward from Petitioner's sentence in recognition of his substantial assistance without a Government motion for that departure. *Id*. Additionally, Petitioner attached fifteen letters from various members of his community expressing Petitioner's integrity and significant contribution to his community through his involvement in church and a local recreation center. *See* Def.'s Sentencing Mem., Attach. 1–15. As such, Petitioner asked for a fine and probation only, rather than a period of incarceration. *Id*. at 1. In the Sentencing Memorandum, Petitioner did not explicitly mention any specific hardship that would be imposed upon his family should he be incarcerated.

The Government's Memorandum in Aid of Sentencing ("Government's Sentencing Memorandum") recommended a one-level downward departure from Petitioner's sentence because, although he cooperated fully, his assistance proved "insufficient to proceed with a prosecution of other individuals," leading the Government to conclude a one-level departure was an adequate reflection of his assistance. 7/8/05 Government's Sentencing Mem. at 7. The Government also discussed the impact of *Booker*, noting that sentencing courts "while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," and that, on appeal, sentences would be subject to review of "reasonableness." *Id*. at 8–9 (quoting *Booker*, 543 U.S. at 261, 125 S.Ct. 738). Therefore, the Government concluded, given "the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of 'reasonableness' review – it is plain that a sentence within the Guidelines, while not required, is reasonable *per se*." Government's Sentencing Mem. at 9.

At the sentencing hearing, the Court granted the Government's motion for a one-level departure based on Petitioner's assistance. 7/22/05 Hr'g Tr. at 3:17–19. Petitioner's counsel presented the Court with a letter from Petitioner's pastor, which the Court read, in lieu of him appearing in person to speak on Petitioner's behalf. *Id*. at 5:6–13, 5:21–11. The substance of Petitioner's counsel's statement at the hearing is as follows:

> Your Honor, I'll be very brief. You know what the law is, you know what the sentencing guidelines are. The government has fairly and fully informed you of what they have to say.
>
> We have stated our view of the law in the presentence memorandum. So it seems to me I've reached the end of my duties and the matter now falls into your hands.
>
> I can tell you this, as you probably know from the materials that you have seen, my client has done a lot of good in the past and he certainly has a potential to do a lot of good. He was involved in something that is serious and for which he has accepted responsibility.
>
> What's going to happen to him in the rest of his life is now in your hands. With that, Your Honor, unless you have some questions, I have nothing else to say.

*Id*. at 6:13–7:1. Petitioner's wife then addressed the Court, asking for leniency and acknowledging the seriousness of her husband's conduct. *Id*. at 7:6–12. Finally, Petitioner stated his remorse for his crime and reiterated his contributions to his community. *Id*. at 8:22–9:22. Nowhere in the briefing or argument at the hearing did Petitioner or his counsel articulate how Petitioner's incarceration would have a detrimental effect on his family. *See id*.; Def.'s Sentencing Mem. The Court noted that his mother was still living, but the only available information stated that she was "retired, [and] had been a librarian in the DC school system" with no reference to any special needs she had. Hr'g Tr. at 9:17–18.

While considering Petitioner's sentence, the Court acknowledged the "number of references" that accompanied Petitioner's sentencing memorandum. *Id*. at 10:1–5. The Court considered the

seriousness of Petitioner's crime and his specific involvement in the scheme, Petitioner's contribution to the community and "spotless record," and his testing positive for marijuana. *Id.* at 13:5–14:9, 12:10–13, 14:10:16. Ultimately, the Court concluded that a split sentence, as opposed to probation only, was the appropriate sentence. *Id.* at 15:5–7. The Court imposed a five-month imprisonment, a $3000 fine, a five-month period of home confinement, and a three-year term of supervised release. *Id.* at 15:8–19, 16:3–18. Finally, the Court notified Petitioner of his right to appeal his sentence within ten days of the Court's judgment. *Id.* 18:25–19:4.

      Petitioner self-committed to begin his five-month sentence on September 12, 2005. Pet'r Mem. at 1. On October 6, 2005, Petitioner filed his present motion to modify his sentence such that he could serve the balance of his period of incarceration in home confinement or a halfway house. *Id.* at 3. He argues that there were "[m]itigating circumstance[s] that could not be completely articulated at sentencing" regarding how his incarceration would detrimentally affect his wife and mother, bringing him within factor 5H1.6 of the United States Sentencing Guidelines, Family Ties and Responsibilities. *Id.* at 1. Petitioner does not state in any detail how his incarceration would have such an impact, stating only that his "family is experiencing extreme hardship, financially, mentally, emotionally, and physically. Petitioner's wife is attempting to carry the financial and caretaking responsibilities that Petitioner was primarily responsible for. His 76 year of age mother's needs, support, and care are in a dire state. . . . decimat[ing] the foundation of his family." Pet'r Mem. at 2. The Government filed the United States' Opposition to Defendant's Motion to Reduce Sentence ("Gov't's Opp'n") on December 13, 2005, arguing that Petitioner's motion is improperly brought as a Section 2255 motion. Gov't's Opp'n at 1 n.1. Rather, the Government argues, the Court should construe his as a motion to modify his sentence pursuant to 18 U.S.C. § 3582, under which, according to the Government, Petitioner is not entitled to relief. *Id.* No reply was filed by

Petitioner.

## II. DISCUSSION

*A.     Petitioner's Motion is Moot*

Petitioner's five-month period of imprisonment began on September 12, 2005, and – as such – came to an end on February 12, 2006. Pet'r Mem. at 1. The second half of his sentence, a five-month period of home confinement, was completed on July 12, 2006. *Id*. Petitioner's motion for modification requests only that the Court "modify the balance of his term of imprisonment to the Halfway House or Home Confinement." *Id*. at 3. Given that Petitioner's period of confinement is over, the time during which the Court could provide him with the modification he sought has passed.

When reconsidering a conviction or sentence, a petitioner's motion must satisfy the Article III § 2 case-or-controversy requirement. *See Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed. 43 (1998). "Once the convict's sentence has expired . . . some concrete and continuing injury other than the now-ended incarceration or parole – some 'collateral consequence' of the conviction – must exist if the suit is to be maintained. *Id*. (citing *Carafas v. LaVallee*, 391 U.S. 234, 237–38, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968)). Examples of such collateral consequences or loss of civil liberties include being subject to deportation and denied naturalization, *Fiswick v. United States*, 329 U.S. 211, 221–223, 67 S.Ct. 224, 91 L.Ed. 196 (1946); having a later sentence increased due to recidivist law, *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); and having one's business license revoked, *Ginsberg v. New York*, 390 U.S. 629, 633 n.2, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). *See Spencer*, 523 U.S. at 9, 118 S.Ct. 978. The Supreme Court has rejected consequences that are "a possibility rather than a certainty or even a probability" as ineligible to constitute a concrete injury. *Id*. at 14, 118 S.Ct. 978 (citing *Lane v. Williams*, 455 U.S.

624, 633 n.13, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982) (referring to a prior parole revocation as "simply one factor, among many, that may be considered by the parole authority in determining" a convict's parole)).

When no such collateral consequences exist, there is no case or controversy for a court to adjudicate, and the issue is moot. *See, e.g.*, *Spencer*, 523 U.S. at 7, 118 S.Ct. 978. In *Lane v. Williams*, the respondents did not challenge the finding that they violated their parole, and only sought relief from the original sentence through release from custody, and the Supreme Court found that, because the sentences had run, "[t]hrough the mere passage of time, respondents have obtained all the relief that they sought. In these circumstances, no live controversy remains." 455 U.S. at 633, 102 S.Ct. 1322. In a similar Sixth Circuit appeal, a prisoner's motion for modification of his sentence from eight months to six months was moot when the eight months had passed. *United States v. Manogg*, No. 92–4361, 991 F.2d 797 (Table), 1993 WL 88217 at *1 (6th Cir. Mar. 26, 1993) ("If a prisoner does not challenge the validity of the conviction but rather only challenges his sentence or some aspect of it, the request for relief is moot once the challenged portion of the sentence has expired.") (citing *Lane*, 455 U.S. at 631, 102 S.Ct. 1322)). Here, Petitioner does not challenge the legitimacy of his sentence or ask for a reduction in its length. Rather, he only asks to serve it at home, and like the respondents in *Lane*, the passage of time has resulted in Petitioner receiving the requested relief, given that his period of incarceration has ended.

In this context, there must be some ongoing injury for Petitioner to maintain an appeal of his now-completed sentence. *See Spencer*, 523 U.S. at 7, 118 S.Ct. 978. In *North Carolina v. Rice*, the Supreme Court stated that "[n]ullification of a conviction may have important benefits for a defendant . . . but urging in a habeas corpus proceeding the correction of a sentence already served is another matter." 404 U.S. 244, 248, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). *Rice* was remanded for

reconsideration of whether reducing the sentence as requested by the respondent, would have any benefits under North Carolina law. *Id*. In the context of Petitioner's request, the difference between serving an identical sentence pursuant to an unchallenged conviction in home confinement rather than in prison does not affect one's civil liberties, and so Petitioner suffers no continued collateral consequences, rendering Petitioner's motion moot now that he has already completed the period of incarceration.

Due to the brevity of Petitioner's time of actual incarceration and the nature of the briefing schedule, Petitioner's motion for modification of his sentence – now fully ripe – has come before the Court too late for the Court to timely consider the relief sought. Additionally, the Court notes that Petitioner could have raised this issue during the month and a half that ensued between his sentencing and his entry into custody. Because Petitioner's motion only requested modifying his period of incarceration to home confinement, because his term of incarceration is over, and because no collateral consequences remain to constitute a case or controversy, the Court shall deny, as moot, Petitioner's request for a modification of his sentence without reaching the merits. However, assuming, *arguendo*, that Petitioner's Motion was not moot, Petitioner would still not be entitled to the relief he seeks.

   B.   *Petitioner is not Entitled to Relief Pursuant to § 2255, § 3582, or Rule 35*

      1.   <u>Petitioner's Motion is Not Properly a Habeas Petition</u>

"Under § 2255, the sentencing court is authorized to discharge or resentence a defendant" if it determines that the sentence was illegal. *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Specifically, a court may do so if it determines the sentence was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized

by law, or is otherwise subject to collateral attack." 18 U.S.C. § 2255. "A petitioner can collaterally attack his sentence under section 2255 where the sentencing judge made an 'objectively ascertainable error.'" *Baylor v. United States*, 314 F. Supp. 2d 47, 50 (D.D.C. 2004) (quoting *King v. Hoke*, 825 F.2d 720, 724–25 (2d Cir. 1987)). The scope of collateral attack is limited such "that an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete misarrange of justice.'" *Addonizio*, 442 U.S. at 185, 99 S.Ct. 2235 (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)).

Here, Petitioner in no way challenges the legality of his sentence. Rather, he seeks reconsideration of his sentence in light of his belief that the Court did not consider his family circumstances in order to limit Petitioner's sentence to home confinement only. *See* Pet'r Mem. Clearly, the Court's decision to require Petitioner to serve half of his ten month sentence in custody, versus home confinement, does not approach a fundamental defect resulting in a complete miscarriage of justice, and therefore Petitioner's request is outside the scope of Section 2255 relief. Although Petitioner styled his motion as a habeas petition under 18 U.S.C. § 2255, his arguments more properly bring it under a motion to modify his sentence under 18 U.S.C. § 3582, which the Court will address more fully below.

      2.    <u>The Court Sentenced Petitioner Properly Within the Advisory Sentencing Guidelines</u>

          a.    *Departures*

Even if the Court's decision not to depart from the Advisory Sentencing Guidelines in handing down Petitioner's sentence based on the family ties and responsibilities factor could cognizably constitute the kind of legal error contemplated by Section 2255, the Court committed no

legal error, in that it acted properly and well within its discretion when it declined to depart based on Petitioner's family circumstances.

Petitioner asserts that his sentence should be modified in light of "[m]itigating circumstances that could not be completely articulated at sentencing." Pet'r Mem. at 1. Specifically, Petitioner seeks home confinement rather than imprisonment because his "family is experiencing extreme hardship, financially, mentally, emotionally, and physically. Petitioner's wife is attempting to carry the financial and caretaking responsibilities that Petitioner was primarily responsible for. His 76 year of age mother's needs, support, and care are in a dire state." *Id.* at 2.

In support of his assertion that he is entitled to have these factors considered, Petitioner cites four Second Circuit cases that "all held that the Guidelines do not bar it from considering" his family circumstances. *Id.* at 2–3 (citing *United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir. 1991) ("downwardly relying on [petitioner's] family circumstances is not an abuse of its discretion" where the defendant lived with his wife, two daughters, grandmother and disabled father, and "his [was] a close-knit family whose stability depends on [defendant's] continued presence"); *United States v. Sharpsteen*, 913 F.2d 59, 64–65 (2d Cir. 1990) (remanding sentencing to the district court to ensure the court knew it "had the authority to depart . . . if the court [found] that the circumstances related to family ties and relationships are extraordinary"); *United States v. Londono*, 76 F.3d 33, 37 (2d Cir. 1996) (acknowledging that "[t]he law recognizes the disruption of family life by imprisonment, and it affords remedies to people who cannot support the burden of a spouse's prolonged incarceration" but declining to extend family ties departure to a couple trying to conceive); *United States v. Galante*, 111 F.3d 1029, 1035–36 (2d Cir. 1997) ("the family circumstances the district court found exceptional are not so far removed from those found exceptional in existing case law that we would be prepared . . . to rule the decision to depart

downward an abuse of the sentencing court's discretion" when a defendant's wife, whose college degree was from Colombia, spoke little English, and could only work her minimum wage job when the defendant husband could care for the children).

According to the policy statement of the Sentencing Guidelines, "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted," and are therefore considered discouraged factors. U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 5H1.6. In applying the statutory language, the D.C. Circuit reversed a sentencing court's family ties downward departure because the defendant had "'shown nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts . . . parental relationships . . . '" where the defendant had three children under the age of four and was still breast feeding at the time of sentencing. *United States v. Dyce*, 91 F.3d 1462, 1467–68 (D.C. Cir. 1996) (quoting *United States v. Daly*, 883 F.2d 313, 319 (4th Cir. 1989)). The Court of Appeals reversed the downward departure because the defendant mother had not shown her "family circumstances were in any degree 'extraordinary.'" *Dyce*, 91 F.3d at 1467. Accordingly, it appears that this Circuit has a narrower view of "extraordinary" circumstances that might warrant a family ties and responsibilities downward departure pursuant to the Sentencing Guidelines, as compared to the Second Circuit cases Petitioner relies upon as examples of circumstances warranting departure.

Additionally, each of the cases Defendant cites pre-date *United States v. Booker*, in which the Supreme Court announced that the Federal Sentencing Guidelines were no longer mandatory. Pre-*Booker*, with respect to departures for discouraged factors such as family ties, "courts [could] depart 'only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.'" *United States v. Rhodes*, 145 F. 3d

1375, 1377, 1382 (D.C. Cir. 1998) (citing *Koon v. United States*, 518 U.S. 81, 95, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). Unless circumstances were extraordinary, it was reversible error for the discouraged factor to be considered. *Riley*, 376 F.3d at 1164 ("[W]e review 'de novo the district court's application of the guidelines to the facts,' to determine whether 'the sentence departs from the applicable guideline range based on a factor that – (i) does not advance the objectives set forth in section 3553(a)(2); or (ii) is not authorized under section 3553(b); or (iii) is not justified by the facts of the case.'") (quoting 18 U.S.C. § 3742(e), (e)(3)(B)). In his motion, Petitioner fails to explain circumstances that make his situation unique such that his family ties should have been considered in his initial sentencing, in that he only vaguely refers to his family's "hardship" and "dire state" without explaining how his absence while incarcerated would affect their well-being. Pet'r Mem. at 2. Pre-*Booker*, not only would the Court's decision not to look at Petitioner's family ties have not been improper, it would have been improper for the Court to do so.

In the post-*Booker* context, where the sentencing guidelines are not mandatory, a court would be permitted to consider discouraged factors such as family ties, but the decision not to do so certainly would not constitute a reversible error. In *United States v. Alston*, a defendant's assertion that her family circumstances should be reconsidered in light of *Booker* was rejected because during the pre-*Booker* sentencing, "the Court weighed defendant's family circumstances, including the government's recommendation of a sentence of community confinement and home detention . . . against defendant's criminal history and the circumstances of the offence. Although having the authority to impose a sentence that did not include incarceration pursuant to a Government motion for downward departure, the Court declined to do so." *United States v. Alston*, No. Crim.A. 02–0057, 2006 WL 1518952, at *4 (D.D.C. May 30, 2006). The court "confirm[ed] that, in the exercise of its discretion in weighing the sentencing factors under 18 U.S.C. § 3553(a), it would not

have imposed a different sentence had it been fully aware of the post-*Booker* sentencing regime at the time of sentencing." *Id*.

This Circuit has considered *Booker's* ramifications on another source of downward departure: substantial assistance. *In re: Sealed Case*, 449 F.3d 118 (D.C. Cir. 2006). Where the statutory language stated that "the sentencing court 'may' consider the listed factors, as well as others, when determining an appropriate reduction . . . it is not required to do so." *Id*. at 126 (citing U.S.S.G. § 5K1.1). Accordingly, the appellant's post-*Booker* challenge of his sentence failed because "*Booker* says nothing to suggest that the sentencing court must consider each of the Section 5K1.1 factors . . . given the plain language of Section 5K1.1, which creates the opposite rule." *Id*. at 125. Here, appellant faces an even greater hurdle in appealing this Court's decision not to look at his family ties because, unlike the substantial assistance departure factor, the family ties and responsibilities factor is discouraged and "not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6.

                        b.       *Variance from the Advisory Sentencing Guidelines*

Petitioner had ample opportunity to inform the Court of any extraordinary familial circumstances that would warrant not only a downward departure but a variance from the Advisory Sentencing Guidelines. The Court considered the fifteen reference letters accompanying Defendant's Sentencing Memorandum, the letter of his pastor in lieu of appearing personally, Petitioner's wife's testimony, and Petitioner's testimony. None of these sources, nor Petitioner's counsel's argument, presented any basis for concluding Petitioner's family ties and responsibilities were so extreme as to warrant a downward departure or variance from the Advisory Sentencing Guidelines. Petitioner now argues that mitigating circumstances were not fully articulated at sentencing. "[T]he defendant . . . bears the burden of proving by a preponderance of the evidence

that he is eligible for a downward departure.'" *United States v. Riley*, 376 F.3d 1160, 1171 (D.C. Cir. 2004) (concluding the sentencing court's downward departure was improper because the defendant, who cared for his children, failed to meet his burden of showing his circumstances were extraordinary) (internal quotation marks omitted). Even assuming, *arguendo*, that Petitioner had brought before the Court, at the time of sentencing, all of the information included in his current Memorandum requesting reconsideration of his sentence, the Court concludes Petitioner still would not have been entitled to a downward departure or variance from the Advisory Sentencing Guidelines because Petitioner cannot satisfy his burden where he fails to plead with any specificity how his family circumstances are in any way out of the ordinary.

Therefore, the Court's decision to not depart downward or vary from the Advisory Sentencing Guidelines based on Petitioner's family ties was entirely proper within the post-*Booker* view of the sentencing guidelines, such that, even if habeas relief were appropriate in this context, the Court committed no error. As the Government argued, "it is plain that a sentence within the Guidelines, while not required, is reasonable *per se*." Government's Sentencing Mem. at 9. Further, as previously discussed, a Court's decision requiring a defendant to serve half of his ten-month sentence in prison, as opposed to in home confinement, is not cognizable within the context of Section 2255 relief, as it is clearly not a fundamental error that resulted in a complete miscarriage of justice.

    3. <u>Even when Construed as Motion to Modify Pursuant to 18 U.S.C. § 3582(c), Petitioner's Motion is Without Merit</u>

The Government argues that Petitioner's motion should be considered a motion to modify his sentence. "Under 18 U.S.C. § 3582(c), a court may modify a sentence only in three circumstances: (1) on motion of the Bureau of Prisons, (2) 'to the extent otherwise expressly

14

permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure,' and (3) to reflect a post-sentence reduction in the applicable sentencing guidelines." *United States v. Morris*, 116 F.3d 501, 504 (D.C. Cir. 1997) (quoting 18 U.S.C. § 3582(c)(1)(B)).  The Bureau of Prisons has not so moved, and Petitioner does not contend that there has been a post-sentence alteration of the sentencing guidelines.  The Court will consider whether reconsideration of Petitioner's sentence would be proper under Rule 35 or 18 U.S.C. § 2255, as it is the only statute Petitioner includes in his motion.

      *a.*  *Petitioner Is Not Entitled to Relief Under Rule 35*

  Rule 35, as amended in 2002, allows for modification of a sentence in two situations:  when the sentence was a product of "clear error" and when the defendant has substantially assisted the government.  Fed. R. Crim. P. 35.  In the first instance, "the court may correct a sentence that resulted from arithmetical, technical, or other clear error" within seven days of sentencing.  Fed. R. Crim. P. 35(a).  Petitioner's only basis for request for modification is that the mitigating circumstances of his family's needs were not "completely articulated at sentencing."  Pet's Mem. at 1.  In addition to the fact that Petitioner did not request a modification of his sentence within seven days of his July 23, 2005 sentencing, the failure of a court to consider a discouraged factor within the sentencing guidelines or to vary from the Advisory Sentencing Guidelines does not constitute arithmetical or technical error within the meaning of Rule 35.  U.S.S.G. § 5H1.6.  Alternatively, a court may reduce a sentence if the defendant has "provided substantial assistance in investigating or prosecuting another person" and the Government has moved for the reduction, which has not occurred here.  Fed. R. Crim. P. 35(b).  As such, Petitioner cannot have his sentence modified under Rule 35.

      *b.*  *Petitioner Is Not Entitled to Relief "by Statute"*

According to 18 U.S.C. § 3582(c)(1)(B), a sentence can be modified "to the extent otherwise expressly permitted by statute . . . ." The only statute for cited by Petitioner is 28 U.S.C. § 2255, which, as the Court has already explained, *see supra* Section II(B)(1)–(2), is an inappropriate remedy for Petitioner's situation, where he claims that a downward departure factor was not adequately considered by the sentencing court. Accordingly, none of the provisions of 18 U.S.C. § 3582(c) apply to Petitioner's situation, and he is not entitled to have his sentence modified.

### III.  CONCLUSION

For the reasons set forth above in this Memorandum Opinion, the Court shall deny Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, as it has exercised its discretion appropriately in determining a sentence which conforms to the factors set out in 18 U.S.C. § 3553(a). An appropriate Order accompanies this Memorandum Opinion.

Date:   July 27, 2006

                                                              /s/
                                                    COLLEEN KOLLAR-KOTELLY
                                                    United States District Judge